IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE HOCHSTETLER, et al., | ) | CASE NO. 5:15-cv-01496 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MENARDS, et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| | ) | |

## I.   Introduction

This is a negligence action governed by Ohio law.[1] Plaintiffs Janice and Jeff Hochstetler, a married couple, seek to recover damages for injuries that resulted when a 12-foot long roll of carpet remnant fell and struck Janice Hochstetler from behind while Plaintiffs were shopping at Defendant Menards'[2] store in Massillon, Ohio, on August 31, 2014.  Doc. 1-2, pp. 1-2, ¶¶ 1-4, 5-6.  Doc. 38, p. 2.

Plaintiffs rely on a constructive knowledge or constructive notice theory of liability. They allege that Menards is liable because a hazardous condition (an unsecured roll of carpet remnant located outside a carpet remnant bay), had existed for a sufficient length of time before

---

[1] Plaintiffs filed this action on June 29, 2015, against Defendant Menard, Inc. in the Stark County Court of Common Pleas.  Doc. 1-2.  On July 29, 2015, Defendant Menards removed the matter to this Court based on diversity jurisdiction.  Doc. 1

[2] The Complaint names two defendants, Menard, Inc. and Menards.  Doc. 1-2.  However, both parties recognize there is only one defendant, i.e., Menard, Inc., also identified throughout both parties' pleadings and briefing as Menards.  *See* Doc. 1-3 (Defendant Menard, Inc.'s Answer indicating that Menard, Inc., is also identified as Menards in Plaintiffs' Complaint); Doc. 30, p. 1 (Defendant Menard, Inc.'s Motion for Summary Judgment, acknowledging that Menard, Inc. is also identified as Menards); Doc. 38 (Plaintiffs' Opposition to Defendant's Motion for Summary Judgment referencing a single defendant).  Defendant will be referred to herein as Menards.

1

the accident to justify an inference that Menards' failure either to warn against or to remove it was negligence. Under a constructive knowledge theory of recovery, Ohio courts have consistently held that "evidence of how long the hazard existed is mandatory in establishing a duty to exercise ordinary care." *Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472, 477 (6th Cir. 2010).

Menards has filed a Motion for Summary Judgment seeking dismissal of this action with prejudice. Doc. 30. The Motion has been fully briefed.[3] As discussed more fully below, Defendant is entitled to summary judgment because Plaintiffs have provided no evidence as to how long the carpet remnant that struck Mrs. Hochstetler was unsecured outside the carpet remnant bay before it fell on her.

## II. Background Facts

Mrs. Hochstetler described the facts preceding the accident in her deposition testimony. Doc. 31-1 (Janice Hochstetler deposition). She testified that, on August 31, 2014, she and her husband were in the process of remodeling their house to get it ready to put on the market. *Id.*, pp. 26-27. They went to the Menards store in Massillon, Ohio, to purchase items they needed for the remodeling, including carpet padding. *Id.* They had been in the store for about an hour and in the area where the rolls of carpet remnant were kept for about 20-30 minutes before a roll fell on her. *Id.*, p. 27. During the time they were in the carpet remnant area, they looked at and selected the carpet padding they wanted. *Id.*, p. 28. The padding was located on shelving immediately above the area in which rolls of carpet remnant were stored. *Id.* The Hochstetlers had a long shopping cart and a regular shopping cart with them. *Id.* After they selected the padding, a Menards' tow motor arrived, got the padding down from the shelving above the rolls

---

[3] Plaintiffs filed an Opposition (Doc. 38) and Defendant filed a Reply (Doc. 39).

of carpet remnant, and placed it on the long shopping cart. *Id.* Mr. Hochstetler went to look for another item he wanted to buy in the store while Mrs. Hochstetler stood with the long cart and the smaller cart waiting for him to return. *Id.* While waiting, she stood with her back to the carpet remnant area. *Id.* She had her phone out and was leaning on one of the shopping carts when the roll of carpet remnant fell and hit her on the back of her head and the right side of her body. *Id.* She estimates she was standing approximately 5 to 10 feet from the carpet remnant area when she was struck. *Id.*, pp. 33-34. Mrs. Hochstetler screamed and the carpet catapulted her forward and she fell. *Id.*, pp. 28-29. Another couple was nearby looking at carpet and the gentleman caught Mrs. Hochstetler before she hit the floor. *Id.*, p. 29. Mr. Hochstetler did not see the carpet remnant fall on his wife. Doc. 32-1, p. 9 (Jeffrey Hochstetler deposition). He heard her scream and ran over. Doc. 31-1, p. 29; Doc. 32-1, p. 9. He saw a carpet lying on the floor next to her and a gentleman holding her. Doc. 32-1, p. 9.

      According to Menards' employee Ryan Savage, who assisted the Hochstetlers in selecting the carpet padding, the area in which the rolls of carpet remnant are stored vertically is called the "carpet remnant bay." Doc. 33-1 (Ryan Savage deposition), pp. 44, 52-53, 85 (Plaintiff's Exhibit 2 to Savage deposition). It has a fence/cage that extends in front and across the top of the bay that prevents 12-foot long carpet remnants from falling forward. *Id.*, pp. 53-55, 62 (Ryan Savage deposition). The parties agree that the roll that fell on Mrs. Hochstetler was at least 12 feet long. Doc. 31-1, pp. 34-55 (Mrs. Hochstetler); Doc. 32-1, p. 9 (Mr. Hochstetler); Doc. 33-1, pp. 48, 54 (Mr. Savage). At the time of the accident, Savage was assisting other customers nearby and his back was turned towards Mrs. Hochstetler. Doc. 33-1, pp. 44-45. He heard her scream and ran over to assist her. *Id.*

3

In their briefing, the parties agree that, in order for the 12-foot long roll of carpet remnant to have fallen on Mrs. Hochstetler, the roll had to be outside the carpet remnant bay. Doc. 30, p. 5 (Menards' brief); Doc. 38, pp. 3-4 (Plaintiffs' brief).[4] However, no witness testified as to how long the remnant that fell on Mrs. Hochstetler was outside the remnant bay. Indeed, no witness testified to seeing a carpet remnant roll outside the remnant bay on the day of the accident before the accident occurred.

Mrs. Hochstetler testified as follows:

Q. Before the accident did the remnants look like they were going to fall?

\*\*\*

A. We weren't looking for remnants. I really have no idea.

\*\*\*

Q. Do you know what caused the remnant to fall?

A. I do not.

Q. Do you know how long the remnant was in the position whereby it could fall?

A. I have no idea.

Doc. 31-1, p. 30:3-4, 6-12.

Mr. Hochstetler could not say whether there was a remnant roll outside the remnant bay before the accident. Doc. 32-1, p. 10. Mr. Savage testified that, when he was helping the Hochstetlers select padding and at the time he turned his back to help other customers, all the remnants were inside the carpet remnant bay. Doc. 33-1, pp. 49, 55-56. He stated that he heard Mrs. Hochstetler scream approximately 3-5 minutes after turning his back to help other

---

[4] A remnant outside of the bay would not have been secured by the gate/fence at the top of the bay.

customers. *Id.*, pp. 45, 56. He turned around, saw that Mrs. Hochstetler had a carpet remnant on her head, and ran over to assist her. *Id.*, p. 45.

Mr. and Mrs. Hochstetler did not see any customers or store employees looking through the carpet remnants and they stated that they did not look through the remnants themselves.[5] Doc. 31-1, pp. 29-31; Doc. 32-1, p. 10.

### III. Summary Judgment Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett¸*477 U.S. 317, 323 (1986) (internal quotations omitted).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). "Inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.* at 587 (internal quotations and citations omitted). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must present specific facts that

---

[5] Mr. Savage's testimony was inconsistent with the Hochstetlers' testimony on this point. Mr. Savage said that he saw Mr. Hochstetler looking through the carpet remnant bay prior to the accident but not removing a remnant. Doc. 33-1, pp. 56, 65. This inconsistency does not affect the Court's analysis of Defendant's Motion for Summary Judgment.

demonstrate there is a genuine issue of material fact for trial. *Matsushita,* 475 U.S. at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). Thus, for a plaintiff to avoid summary judgment against him, "there must be evidence on which a jury could reasonably find for the plaintiff." *Id.*. at 252. Accordingly, in determining whether summary judgment is warranted, a judge generally asks "whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (emphasis in original) (internal citations omitted).

## IV. Law & Analysis

This case involves the duty owed by a shopkeeper to its invitees. In Ohio, "[a] shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203 (1985); *see also Presley v. City of Norwood*, 36 Ohio St.2d 29, 31 (1973) ("The duty owed by a proprietor to his business invitees is one of ordinary care to insure their safety."). However, "[a] shopkeeper is not . . . an insurer of the customer's safety." *Paschal*, 18 Ohio St.3d at 203.

6

In order for a business invitee to recover for injuries sustained on the premises of a business due to a hazardous condition, a plaintiff must establish:

1. That the defendant through its officers or employees was responsible for the hazard complained of; or

2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Dowling*, 593 F.3d at 476-477 (citing *Combs v. First Nat'l Supermarkets, Inc.*, 105 Ohio App.3d 27, 663 N.E.2d 669, 670 (1995) (quoting *Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 49 N.E.2d 925, 928 (1943)).

There is no dispute between the parties that the Hochstetlers were business invitees of Menards on August 31, 2014. Plaintiffs do not argue that Defendant is liable under the first or second theories of liability. Rather, they contend that Menards is liable under the third theory, i.e., that Menards had constructive knowledge of a hazardous condition.

Under a constructive knowledge theory of recovery, Ohio courts have consistently held that "evidence of how long the hazard existed is mandatory in establishing a duty to exercise ordinary care." *Dowling*, 593 F.3d at 477 (citing and relying on *Comb*, 663 N.E.2d at 671 (relying on *Anaple v. Standard Oil Co.*, 162 Ohio St. 537, 124 N.E.2d 128 (1955)). Evidence may be direct or circumstantial. *Brymer v. Giant Eagle, Inc.*, 2011 WL 3558115, * 4 (Ohio App. Ct. Aug. 12, 2011). It is a plaintiff's burden to present evidence regarding the time a hazardous condition was present. *Stanton v. Marc's Store*, 2015 WL 9595146, * 4 (Ohio App. Ct. 2015). "Without such evidence, it is impossible to determine whether the premises owner should have discovered the hazard upon a reasonable inspection." *Ray v. Wal-Mart Stores, Inc.*,

7

993 N.E.2d 808, 824 (Ohio App. Ct. June 20, 2013). Accordingly, "if a plaintiff fails to present evidence showing how long the alleged hazard existed, then the plaintiff cannot show that the defendant breached the standard of care." *Id.* For example, in *Stanton*, the court concluded that summary judgment in favor of the store was warranted on the issue of constructive notice because "[t]here was no witness attesting to the substance on the floor at some specified point prior to the spill in order to suggest that the spill 'had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.'" 2015 WL 9595146, * 6 (internal citation omitted); *see also Titenok v. Wal-Mart Stores E., Inc.*, 2013 WL 3341205, * 4 (Ohio App. Ct. June 27, 2013) (Where plaintiff did "not know what the substance was, how it came to be on the aisle floor, or how long it was there, the trial court correctly concluded [plaintiff] did not demonstrate constructive notice.").

"Where the doctrine of *res ipsa loquitur* does not apply,[6] in order for an inference to arise as to negligence of a party, there must be direct proof of a fact from which the inference can reasonably be drawn. A probative inference for submission to a jury can never arise from guess, speculation or wishful thinking. The mere happening of an accident gives rise to no presumption of negligence." *Paras v. Standard Oil Co.*, 160 Ohio St. 315, 319 (1953); *Titenok*, 2013 WL 3341205, * 4 ("Mere speculation or conjecture is insufficient as a matter of law to constitute proof that appellee committed a wrongful or negligent act.").

---

[6] Plaintiffs do not argue that *res ipsa loquitur* applies in this case. *Res ipsa loquitur* requires a showing "(1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Ray*, 993 N.E.2d at 826 (quoting *Jennings Buick, Inc. v. Cincinnati*, 63 Ohio St.2d 167, 170-71, 406 N.E.2d 1385 (1980), quoting *Hake v. Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66-67, 262, N.E.2d 703 (1970)) (internal quotations omitted). "Ohio courts generally hold that a premises occupier will not be deemed to have exclusive control over an object where the public has access to it . . . [and] [s]imilarly, Ohio courts have held that a defendant does not have exclusive control over a display of merchandise where members of the public frequent an area and have access to the display." *Ray*, 993 N.E.2d at 826-827 (internal citations omitted).

Here, while all parties agree that, in order for the 12-foot carpet remnant to have fallen on Mrs. Hochstetler, it had to be outside the carpet remnant bay (Doc. 30, p. 5 (Menards' brief); Doc. 38, pp. 3-4 (Plaintiffs' brief)), there is no evidence as to how long the remnant was outside the bay.  Notwithstanding this lack of evidence, Plaintiffs argue that a "jury could conclude that the carpet that fell on Mrs. Hochstetler was unsecured and unattended for thirty minutes or more" and that the facts "support the reasonable inference that the carpet was in its place—outside the bay and unsecured—for thirty minutes or more before it fell on Mrs. Hochstetler[.]" Doc. 38, p. 9.  This argument is not consistent with the evidence, including Plaintiffs' own testimony. Plaintiffs reason that, because Mrs. Hochstetler did not notice anyone moving a remnant roll behind her while she was standing with her back to the remnant bay and because she would have noticed someone doing that,[7] the roll must have been outside the bay for 30 minutes.  While Plaintiffs assume that Mrs. Hochstetler was standing with her back to the carpet remnant bay for 20-30 minutes[8] (Doc. 38, p. 11),  that was not her testimony.  Rather, she testified that she and her husband spent a <u>total</u> of 20-30 minutes in the carpet remnant section before the accident. Doc. 31-1, p. 27.  During only part of that time was she standing with her back to the remnant bay.  Indeed, during part of the time, the Hochstetlers, with the assistance of Mr. Savage, were selecting carpet padding from rolls of padding that were on a shelf directly above the remnant bay.  Doc. 31-1, p. 28; Doc. 33-1, p. 44.  Further, Mrs. Hochstetler did not testify either that she observed no one moving a carpet remnant behind her or that she would have noticed if anyone had done that. She did indicate that there were other customers in the

---

[7] Plaintiffs argue that, since they estimate the carpet remnant weighed anywhere from 150-300 pounds and Mrs. Hochstetler is only 5'4" tall, she would have noticed someone moving the carpet remnant roll behind her.  Doc. 38, p. 9.

[8] Plaintiffs argue Mrs. Hochstetler "didn't notice any carpet outside the bay because she never went into and was not paying attention to the bay; in fact, she had her back to the bay *the entire time*."  Doc. 38, p. 11 (emphasis supplied).

9

area. For example, she stated that, the customer who caught her as she fell "was looking at the big rolls of carpet. He was probably ten feet away from me." Doc. 31-1, p. 36:5-9. The accident happened on the Labor Day weekend. Doc. 33-1, p. 41. During holiday weekends there are generally more shoppers in the store than on other weekends; the store was "fairly busy" that weekend. *Id.*, pp. 22, 41.

Plaintiffs' argument also relies on a photograph they took in the carpet remnant area of the Menards' store on November 8, 2014, approximately 2 months after the accident. Doc. 31-1, p. 31. In the photograph, shown at pages 7 and 12 of Plaintiffs' brief (Doc. 38, pp. 7, 12),[9] an unsecured carpet remnant roll is leaning up against a shelving unit close to the carpet remnant bay. Doc. 31-1, pp. 31-33. However, Mrs. Hochstetler testified that, on August 31, 2014, at the time of the accident, the carpet remnant area did not look the same as it does in the November 8, 2014, photo. *Id.*, p. 33. When shown the photo during her deposition, Mrs. Hochstetler was asked:

> Q. And this is not how it looked on the day of your accident?
>
> A. Correct.
>
> Q. There was no carpet remnant that was outside of the carpet remnant corral [on the date of the accident]?
>
> A. To the best of my knowledge I don't know. We didn't go in that section. I have no idea if there was one sitting there or not. I didn't notice it.
>
> Q. You can't say whether there was a carpet in that position [as in the photo] on the day of your accident?
>
> A. Correct.

Doc. 31-1, p. 33:15-24.

---

[9] *See also* Doc. 31-1, p. 59 (Deposition Exhibit B).

Mr. Hochstetler could not say whether there was a carpet remnant outside of and leaning up against the carpet remnant section on the day of the incident as shown in the photo. Doc. 32-1, p. 10. He only recalled seeing a tow motor going down the aisle a few times but did not know whether there was a tow motor going by at the time of the accident because his back was turned to the area. *Id.*, pp. 10-11. Mr. Savage testified that there were no carpet remnants outside the carpet remnant bay when he assisted the Hochstetlers and when he turned his back to assist other customers.[10] Doc. 33-1, pp. 49, 55.

Plaintiffs' argument is not evidence from which a jury could make a reasonable inference as to the length of time that the carpet remnant that fell on Mrs. Hochstetler was outside the carpet remnant bay. *See e.g., Dowling*, 593 F.3d at 477 (plaintiffs presented no evidence from which to infer that an alleged hazard had been present long enough for defendant to have constructive knowledge of its existence); *Stanton*, 2015 WL 9595146, * 6 (finding "no evidence from which a jury could infer how long the substance was on the floor and thus no evidence supporting the store's constructive notice"). Rather, Plaintiffs' argument amounts to speculation, i.e., although Plaintiffs did not see a carpet remnant outside the carpet remnant bay during the 20-30 minutes they were in the area, an unsecured carpet remnant must have been outside the carpet bay during that entire time because Mrs. Hochstetler would have observed someone moving a large carpet remnant behind her. This speculation, fails to meet Plaintiffs' burden to present evidence as to how long the carpet remnant that fell on Mrs. Hochstetler was outside the carpet remnant bay.

"Construing the evidence strongly in [the Hochstetlers'] favor, reasonable minds could not conclude how long the [carpet remnant roll was outside the carpet remnant bay unsecured]

---

[10] While Plaintiffs' brief notes that "Mr. Savage admitted having seen unsecured rolls of carpet in this location before the incident . . ." (Doc. 38, p. 8), in the testimony cited (Doc. 33-1, pp. 60-62), Mr. Savage did not testify that he saw an unsecured roll of carpet outside the bay on the day of Mrs. Hochstetler's accident.

11

and thus 'whether the [carpet remnant] was there long enough to justify an inference that [Menards'] failure to remove it or warn its customers was negligent.'" *Hunter v. Wal-Mart Stores, Inc.*, 2002 WL 1058191, * 4 (Ohio App. Ct. May 28, 2002) (quoting *Johnson*, 141 Ohio St. at 589, 49 N.E.2d 925) (affirming summary judgment in favor of store where plaintiff failed to establish that store had constructive notice of alleged hazardous condition). Accordingly, since Plaintiffs have not shown that there exists a genuine issue of material fact as to whether Menards breached its duty of ordinary care, summary judgment in favor of Menards must be granted. *See Paras*, 160 Ohio St. at 319; *see e.g., Titenok*, 2013 WL 3341205, * 4 (plaintiff's reliance on the size of a puddle was insufficient to establish the length of time the alleged hazard existed); *Stanton*, 2015 WL 9595146, * 4-6; *Ray*, 993 N.E.2d 808, 823 ("Appellants . . . offer no specific evidence to show that at least one employee actually did see the hazard. Instead, their assertion that at least one employee *must have* observed the hazard amounts to speculation.") (emphasis supplied); *Sharp v. Andersons, Inc.*, 2006 WL 2259706, * 4-7 (Ohio App. Ct. Aug. 8, 2006) (where plaintiff presented no evidence as to where a grape she slipped on came from and had "no idea" as to the length of time the grape had been on the ground before her fall, her argument that the grape must have come from one of three grape purchases made at the checkout where she fell that were documented by point of sale records was pure speculation); *Roe v. Perkin's Family Restaurants*, 2003 WL 22110396, * 3 (Ohio App. Ct. Sept. 12, 2003) (affirming summary judgment in favor of restaurant where a jury would be required to engage in speculation).[11]

---

[11] *Combs v. First Natl. Supermarkets, Inc.*, 105 Ohio App.3d 27 (1995) and *Cohen v. Kroger Company*, 8 Ohio App.3d 21 (1982), cited by Plaintiffs to support their constructive notice theory of liability, do not warrant a different outcome. In both of those cases there was evidence presented regarding the length of time that the alleged hazardous condition existed *See Combs*, 105 Ohio App.3d at 29-31; *Cohen*, 8 Ohio App.3d at 21-22.

Based on the foregoing, the Court concludes that Mrs. Hochstetler has failed to demonstrate a genuine issue of material fact sufficient to defeat Defendant's motion for summary judgment with respect to her negligence claim. Plaintiffs concede that Mr. Hochstetler's loss of consortium claim is derivative of Mrs. Hochstetler's negligence claim and that if Mrs. Hochstetler's negligence claim fails so too does Mr. Hochstetler's claim. Doc. 38, p. 12.

## V.  Conclusion

As set forth above, the Plaintiffs have failed to present any evidence as to how long the roll of carpet remnant was unsecured and outside the carpet remnant bay before it fell on Mrs. Hochstetler. Under a constructive notice theory of liability as is advanced by Plaintiffs in this case, such evidence "is mandatory in establishing a duty to exercise ordinary care." *See Dowling*, 593 F.3d at 477. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 30) and **DISMISSES WITH PREJUDICE** Plaintiffs' claims against Defendant.

**IT IS SO ORDERED.**

Dated: September 12, 2016

_____
KATHLEEN B. BURKE
United States Magistrate Judge